UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RONALD S. ROTHMAN,<br><br>**Plaintiff,**<br><br>v.<br><br>FEDERAL NATIONAL MORTGAGE ASSOCIATION, *et al.*,<br><br>**Defendants.** | Civil Action No. 21-3198 (JEB) |

## MEMORANDUM OPINION

Plaintiff Ronald Rothman believes that he faces the foreclosure of his New Jersey residence. His mortgage situation is complex because he sold his house to his adult son, Bernard, in a complicated transaction fifteen years ago but continues to occupy the house. His *pro se* suit names three Defendants: Federal National Mortgage Association, Federal Housing Financing Agency, and Wells Fargo Bank. Rothman alleges that these entities conspired to provide his son a mortgage that they knew he could not afford with the goal of collecting the proceeds of a later foreclosure sale. Bernard, however, is notably absent from this lawsuit. Defendants now separately move to dismiss, raising various arguments including sovereign immunity, lack of standing, and statute of limitations. The Court agrees that the Complaint is facially deficient and cannot survive the Motions.

**I.  Background**

According to Plaintiff's Complaint, which the Court must credit at this stage, the events giving rise to this lawsuit began with the July 2006 sale of a home from Plaintiff to his son, Bernard Rothman. See ECF No. 1 (Compl.), ¶ 1. While that property, located at 2823 Schooner

1

Lane, Hammonton, New Jersey, was valued at $227,000, Plaintiff sold it to Bernard for $650,000. Id. at 3. This discrepancy is one of a number that are never explained. In any event, Bernard financed his purchase with a $417,000 loan secured by a mortgage on the Schooner Lane property. Id. at 2, ¶¶ 1–2. The lender was Superior Mortgage Corporation, which served as the vendor for the Federal National Mortgage Association (Fannie Mae), which "was the real party of interest and investor." Id. at 2; id., Exh. A (Mortgage) at ECF p. 11. Shortly thereafter, the mortgage was assigned to Wells Fargo. Id. at 2.

In order to obtain approval for this loan, Bernard used funds from his father to pay off his personal debts. Id. at 2–3. Plaintiff alleges that this money, which Bernard "concealingly and incorrectly" labeled as a gift on his mortgage application, was intended to be an investment in Bernard's business. Id. It was Plaintiff's understanding that this investment was made in exchange for being permitted to reside free of charge in the Schooner Lane home after the sale. Id.

Although Bernard initially kept up with the mortgage, he stopped making payments after approximately ten years. See ECF No. 11-6 (Certification of Amount Due); see also Lewis v. DEA, 777 F. Supp. 2d 151, 159 (D.D.C. 2011) ("The court may take judicial notice of public records from other court proceedings."). He then filed for bankruptcy in 2019. See Compl., ¶ 8; see Rothman v. Wells Fargo, N.A., No. 19-16039, 2020 WL 2731090, at *1 (D.N.J. May 26, 2020). During the course of those proceedings, Wells Fargo sought and was granted relief from a bankruptcy stay in order to foreclose on the Schooner Lane property. Rothman, 2020 WL 2731090, at *1, *4. There is no evidence, however, that the bank followed through in filing such an action; instead, Wells Fargo assigned the mortgage and note to U.S. Trust National Association, as Trustee of the Igloo Series IV Trust. See ECF No. 11-16 (September 27, 2019,

2

Assignment). It was later reassigned once more to U.S. Bank Trust National Association, as Trustee of the Cabana Series IV Trust. See ECF No. 11-17 (February 3, 2020, Assignment).

Perhaps hoping to forestall a bank foreclosure, Rothman filed his own action to foreclose on the property in August 2021. See Compl., ¶ 9; ECF No. 11-18 (Foreclosure Action Complaint). There, he asserted that the money he had lent Bernard was in fact a purchase-money mortgage in the amount of $500,000. See Foreclosure Action Complaint, ¶¶ 1–3. According to the allegations in that action, Bernard has not made any payments on this mortgage, and it has been in default since June 2016, when complete payment was due. Id., ¶ 3. Plaintiff recorded this mortgage on July 9, 2021, nearly fifteen years after he allegedly entered into the agreement with his son. Id. A New Jersey court dismissed this foreclosure action in December 2021. See ECF No. 11-19 (Foreclosure Action Docket) at ECF p. 4.

On November 26, 2021, Plaintiff filed this suit against Defendants FHFA, Wells Fargo, and Fannie Mae. His son is not named as a defendant. See Compl. at 4. Rothman alleges that Defendants conspired to issue to his son a mortgage that they knew he could not afford and then to collect the proceeds from the foreclosure sale when Bernard defaulted. Id., ¶¶ 3–5. He further alleges that Defendants violated New Jersey state law by not filing a Notice of Settlement within the required timeline and by backdating the version they did file, thus rendering the mortgage void. Id. at 3. As to FHFA alone, Rothman contends that it failed to supervise Fannie Mae's issuance of the loan agreement to Bernard. Id. at 2. Plaintiff, who continues to reside at Schooner Lane, alleges that he faces harm attributable to Defendants' actions because he will lose his home if the property is foreclosed upon and because his son misspent the money that Rothman intended to be used for his business. Id. at 4; ECF No. 17 (Pl. Opp.), ¶ 21. He seeks "damages and putative [sic] damages in an unspecified [a]mount o[f] at least [] $780

[thousand]"; he does not seek injunctive relief, including the barring of a foreclosure action. See Compl. at 7.

Defendants Wells Fargo and Fannie Mae jointly moved to dismiss the Complaint on January 31, 2022. See ECF No. 11-2 (Wells Fargo/Fannie Mae MTD). That same day, FHFA filed its own Motion to Dismiss. See ECF No. 14-1 (FHFA MTD).

## II. Legal Standard

Because Defendants seek dismissal based on both lack of standing and failure to state a claim, the Court will apply the standards for Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

When a defendant seeks dismissal under Rule 12(b)(1), the plaintiff must show that the Court has subject-matter jurisdiction to hear his claim. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); U.S. Ecology, Inc. v. U.S. Department of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000). "Absent subject matter jurisdiction over a case, the court must dismiss [the claim]." Bell v. U.S. Department of Health & Human Services, 67 F. Supp. 3d 320, 322 (D.D.C. 2014). "Because subject-matter jurisdiction focuses on the court's power to hear the plaintiff's claim, a Rule 12(b)(1) motion [also] imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).

In policing its jurisdictional borders, a court must scrutinize the complaint, granting the plaintiff the benefit of all reasonable inferences that can be derived from the alleged facts. See Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005). A court need not rely "on the complaint standing alone," however, but may also look to undisputed facts in the

4

record or resolve disputed ones.  See Herbert v. National Academy of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992).

Rule 12(b)(6), conversely, permits dismissal of a complaint for failure to state a claim upon which relief may be granted.  In evaluating such a motion to dismiss, courts must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570) — that is, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  The court need not accept as true, then, "a legal conclusion couched as a factual allegation," Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)), nor "inferences . . . unsupported by the facts set out in the complaint."  Id. (quoting Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)).  And it may consider not only "the facts alleged in the complaint," but also "any documents either attached to or incorporated in the complaint[,] and matters of which [courts] may take judicial notice." Equal Employment Opportunity Commission v. St. Francis Xavier Parochial School, 117 F.3d 621, 624 (D.C. Cir. 1997).

Complaints filed by *pro se* parties are to be liberally construed.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).  In recognizing that Plaintiff is *pro se*, the Court will consider both

facts that he has put forth in his Complaint and those in his Opposition. See Brown v. Whole Foods Market Group, Inc., 789 F.3d 146, 152 (D.C. Cir. 2015).

**III.   Analysis**

Defendants FHFA — as well as Fannie Mae and Wells Fargo in a joint Motion — argue that Plaintiff's Complaint should be dismissed on multiple grounds. Both Motions contend that jurisdictional and time bars defeat Rothman's claims. See FHFA MTD at 9–14, 15–17; Wells Fargo/Fannie Mae MTD at 7–9. They also assert that he has failed to state a claim upon which relief can be granted. See FHFA MTD at 14–15, 17–19; Wells Fargo/Fannie Mae MTD at 9–11. The Court first looks at FHFA's Motion and then takes up the joint Motion of the other Defendants.

    A.   Federal Housing Finance Agency

Defendant FHFA was established in 2008 as an independent federal agency with regulatory and oversight authority over Fannie Mae, among others. See Perry Capital LLC v. Mnuchin, 864 F.3d 591, 599 (D.C. Cir. 2017). It also serves as the conservator of Fannie Mae with "broad authority and discretion over [its] operation[s]" and is the successor to "all rights, titles, powers, and privileges of [Fannie Mae], and of any stockholder, officer, or director" thereof. Id. at 599–600. FHFA thus functions in two capacities: as a regulator and as a conservator.

As Defendant notes, it is not clear in which capacity Plaintiff is suing the agency. See FHFA MTD at 10. The Court will follow FHFA's lead and assume that the allegations are brought against FHFA in both capacities. It considers each in turn.

1. *As Regulator*

FHFA argues that it is shielded from Rothman's suit against it in its regulatory capacity by sovereign immunity, and that, in any event, these claims are time-barred. See FHFA MTD at 10–14.

When acting in its regulatory capacity, FHFA functions as an agency of the federal government. "[S]overeign immunity shields the Federal Government and its agencies from suit" unless such immunity has been waived. FDIC v. Meyer, 510 U.S. 471, 475 (1994) (citation omitted). "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text," and, to support a claim for damages, it "must extend unambiguously to such monetary claims." Lane v. Pena, 518 U.S. 187, 192 (1996); see also United States v. Mitchell, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.").

Plaintiff identifies no waiver, instead arguing that "a waiver is not necessary" because "Sovereign Immunity is not unlimited[,] especially not for Officers and Employees of a Federal Agency . . . [a]nd especially not in the case of fraud and deceit or abuse of contracts," which Rothman considers this to be. See Pl. Opp., ¶ 24. Yet Rothman is not suing any officer or employee here.

The Court nonetheless considers whether a waiver might exist for his case. The most plausible source is the Federal Tort Claims Act, which waives sovereign immunity to "make[] the federal government liable to the same extent as a private individual for certain torts of federal employees acting within the scope of their employment." Johnson v. Veterans Affairs Medical Center, 133 F. Supp. 3d 10, 14–15 (D.D.C. 2015); 28 U.S.C. §§ 1346, 2674. That Act requires, however, that any claim be brought against the United States in order for the waiver to apply.

See Johnson, 133 F. Supp. 3d at 16–17. As the reader can deduce from the caption of this case, Plaintiff has not met this requirement. Because the "[f]ailure to name the United States as the defendant in an FTCA action requires dismissal for lack of subject-matter jurisdiction," this alone is grounds for granting FHFA's Motion if Plaintiff's claims sound in tort. Id. at 17.

Amending his Complaint to name the United States as a defendant would also yield no relief since the FTCA "provides that an 'action shall not be instituted upon a claim against the United States for money damages' unless the claimant has first exhausted his administrative remedies.'" McNeil v. United States, 508 U.S. 106, 107 (1993) (quoting 28 U.S.C. § 2675(a)). Rothman does not allege that he has done so, instead asserting that "[t]here are not any administrative remedies that would permit a suit." Pl. Opp., ¶ 25. He offers no further explanation, however, for this unconvincing *non sequitur*. See Lamb v. Bureau of Alcohol, Tobacco, Firearms & Explosives, 790 F. App'x 222, 222 (D.C. Cir. 2020) (dismissing arguments that exhaustion requirement should not apply). Failure to exhaust thus provides an additional basis for dismissing Plaintiff's claims.

To the extent that Rothman alleges causes of action that fall outside of the FTCA, those, too, run up against jurisdictional bars. For example, he appears to allege an unjust-enrichment claim. See Compl. at 2; Pl. Opp., ¶ 26. This is considered a form of implied-in-law contract claim. See U.S. ex rel. Modern Electric, Inc. v. Ideal Electronic Security Co., Inc., 81 F.3d 240, 247 (D.C. Cir. 1996) (describing D.C. law); Bethea v. Roizman, No. 11-254, 2012 WL 2500592, at *15 (D.N.J. June 27, 2012). The applicable source of waiver, then, would seem to be the Tucker Act, 28 U.S.C. § 1491, which waives sovereign immunity for contract claims and other non-tort suits against the United States. The Supreme Court has held, however, that "the Act

does not reach claims based on contracts implied in law," and so Plaintiff is out of luck. Mitchell, 463 U.S. at 218.

The Tucker Act is also the vehicle under which Rothman could bring any actual contract cause of action against Defendants. See Chandler v. Federal Bureau of Prisons, 226 F. Supp. 3d 1, 7 (D.D.C. 2016). Any claim under that Act that seeks damages in an amount greater than $10,000, however, falls within the exclusive jurisdiction of the Court of Federal Claims. Id. (citing 28 U.S.C. § 1491(a)(2)). Because Rothman here seeks damages of "at least [] $780 K or to be determine[d] in Discovery but far higher than $75 K," Compl. at 7, this Court lacks jurisdiction over any claim that sounds in contract. See Hansson v. Norton, 411 F.3d 231, 232 (D.C. Cir. 2005) (holding district court lacked jurisdiction over contract claim against United States for more than $10,000).

Last, to the extent that Plaintiff brings a claim under the Administrative Procedure Act, it, too, is barred by sovereign immunity. That Act waives sovereign immunity, but only for actions "seeking relief other than money damages." 5 U.S.C. § 702 (emphasis added). As Rothman does desire money, the APA's waiver of sovereign immunity does not apply, see Lamb, 790 F. App'x at 222, and any APA claim is also subject to dismissal for lack of jurisdiction. See Clayton v. District of Columbia, 931 F. Supp. 2d 192, 200 (D.D.C. 2013) ("If sovereign immunity has not been waived, a claim is subject to dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction.").

Even if Plaintiff had surmounted the hurdle of sovereign immunity, his claims against FHFA in its regulatory capacity would be time-barred. Absent exceptions that do not apply here, "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). As will be

9

discussed further below, a claim accrues when an injury occurs or when a plaintiff discovers, or reasonably should have discovered, such injury.  See infra at 14.  The mortgage underlying this action was recorded on July 28, 2006.  See Mortgage.  At that date, Plaintiff was on constructive notice of his alleged injury.  See Meyer v. PHH Mortgage Corp., No. 16-2255, 2016 WL 5934691, at *3 (D.N.J. Oct. 11, 2016) (finding plaintiffs had constructive notice of publicly recorded mortgage).  He was therefore required to bring this claim by 2012 to comply with the statute of limitations for actions against the federal government.  Since he did not file his Complaint until 2021, it is too late.

2. *As Conservator*

The Court assumes that Plaintiff also intends to sue FHFA in its capacity as the conservator of Fannie Mae.  In that capacity, FHFA "steps into Fannie Mae's shoes, sheds its government character, and becomes a private party."  FHFA MTD at 9 (citing Herron v. Fannie Mae, 861 F.3d 160, 169 (D.C. Cir. 2017)).  Sovereign immunity thus does not shield FHFA as the conservator from suit.

That should not change the outcome, FHFA contends.  The agency submits that Rothman has not established that he has suffered an injury in fact or that any injury could be traced to the actions of FHFA, meaning that he has no standing to pursue these claims.  See FHFA MTD at 15–16.

Federal courts decide only "'cases and controversies,' and the doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process." Whitmore v. Arkansas, 495 U.S. 149, 154–55 (1990); see U.S. Const. art. III, § 2, cl. 1.  A party's standing "is an essential and unchanging part of the case-or-controversy requirement of Article III."  Lujan, 504 U.S. at 560.  To have standing, a party must, at a constitutional

minimum, meet the following criteria. First, it "must have suffered an injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." Id. (citations and internal quotation marks omitted). Second, "there must be a causal connection between the injury and the conduct complained of — the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" Id. (alterations in original) (citation omitted). "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Id. at 561 (citation omitted). A "deficiency on any one of the three prongs suffices to defeat standing." U.S. Ecology, Inc., 231 F.3d at 24.

Injury is the "[f]irst and foremost" of standing's three elements. See Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 103 (1998). To meet this requirement, a plaintiff must show that he has suffered a distinct harm or that harm is "imminent." Clapper v. Amnesty International USA, 568 U.S. 398, 409 (2013). While "imminence is concededly a somewhat elastic concept," the "'threatened injury must be certainly impending to constitute injury in fact,' and . . . '[a]llegations of possible future injury' are not sufficient." Id. (quoting Whitmore, 495 U.S. at 158) (emphasis and alterations in original). In suits for damages, "the mere risk of future harm, standing alone, cannot qualify as concrete harm" sufficient to satisfy the injury-in-fact requirement. TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2210–11 (2021).

Plaintiff runs into precisely that barrier here. His alleged injury is the risk of losing his home and the money invested therein should his son's creditors foreclose on the overdue mortgage. See Compl. at 4. Although Wells Fargo indicated interest in foreclosing on the property in the past, see Rothman, 2020 WL 2731090, at *4 (affirming grant of relief from

11

bankruptcy stay to Wells Fargo to permit foreclosure), the facts alleged here show that no foreclosure action is currently underway; moreover, Wells Fargo no longer even holds the mortgage. See Compl. at 4; see also September 27, 2019, Assignment. Nor has Rothman alleged facts tending to show that a foreclosure is "certainly impending." Clapper, 568 U.S. at 409 (emphasis and citation omitted). Plaintiff has thus demonstrated only a speculative risk of future harm, and that will not suffice to establish his standing to pursue damages at this juncture. TransUnion, 141 S. Ct. at 2210–11.

Even if the Court believed that foreclosure was headed his way, Rothman has not shown a causal connection between that injury and FHFA. For there to be a sufficient connection, the alleged harm must be "fairly traceable" to an action of FHFA. Lujan, 504 U.S. at 560 (cleaned up). Injuries that are "th[e] result [of] the independent action of some third party not before the court" do not satisfy the "traceability" component of constitutional standing. Id. at 560–61 (quoting Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 41–42 (1976) (alterations in original)). Plaintiff's causal hook here is that FHFA failed to supervise Fannie Mae's approval of the loan to Bernard. See Compl. at 2. "It is 'substantially more difficult' to establish standing when the alleged injury arose because of the government's failure to regulate a third party." Canuto v. Pelosi, No. 19-1791, 2019 WL 6525644, at *3 (D.D.C. Dec. 4, 2019) (quoting Lujan, 504 U.S. at 562). Rothman has not overcome that difficulty here. Even setting aside the fact that FHFA did not exist when the mortgage was entered into — it was not created until 2008 — any injury caused to Plaintiff was primarily a result of Bernard's actions, not those of FHFA or Fannie Mae. It was Bernard who sought the loan and later failed to make the required payments, thus putting the property at risk of foreclosure. Because Rothman has named FHFA

12

and not his son as Defendant in this action, he has not established constitutional standing to bring this claim.

The same is true for Plaintiff's second alleged injury: the "irreparable harm and financial losses" he suffered as a result of his son's use of the gifted or lent funds for a purpose other the one Rothman intended. See Pl. Opp., ¶ 21. Indeed, the connection to FHFA is even more attenuated in this instance, as Bernard alone had access to the funds and the power to spend them. Unsurprisingly, Plaintiff does not appear to allege any conduct by FHFA that relates to the misuse of the money. Because any injury arising from such misuse is attributable to Bernard, not to FHFA, Rothman has no standing to sue FHFA based on this alleged injury either.

In any event, even if Plaintiff had standing, his claims against FHFA would still be time-barred. The agency argues that any relevant statute of limitations in either D.C. (where this action was brought) or New Jersey (where the property is located) has long since run. See FHFA MTD at 17 (citing Boyd v. Kilpatrick Townsend & Stockton, LLP, 79 F. Supp. 3d 153, 159 n.3 (D.D.C. 2015); Habib v. Raytheon Co., 616 F.2d 1204, 1208 (D.C. Cir. 1980); and D.C. Code § 12-301 (establishing three-year limitations periods for relevant claims in D.C.) and Tammera v. Grossman, No. 10-569, 2010 WL 1372406, at *6 (D.N.J. Mar. 29, 2010); Jacobson v. Celgene Corp., No. 09-4329, 2010 WL 1492869, at *3 (D.N.J. Apr. 14, 2010); and N.J. Rev. Stat. § 2A:14-1 (establishing six-year limitations periods for relevant claims in New Jersey)).

Rothman does not contest these limitations periods or that most of his claims are time-barred under the authorities FHFA cites. See Pl. Opp. As to his claims based on the filing of the Notice of Settlement, however, he argues that the clock did not begin to run until he discovered the alleged fraud four months ago, and so the period has not yet expired. Id., ¶ 23. Even

accepting that the late filing of the Notice of Settlement would render the sale void — which the Court doubts is a correct reading of New Jersey law — Plaintiff's suit is untimely.

Under both New Jersey and federal law, a statute-of-limitations period begins to run when a plaintiff knew "or with reasonable diligence should have known" of the alleged wrongdoing that forms the basis of his claim. Hagan v. United States, 275 F. Supp. 3d 252, 258 (D.D.C. 2017) (describing rule for FTCA claims); see also Henry v. New Jersey Department of Human Services, 9 A.3d 882, 892 (N.J. 2010) (describing accrual date as when plaintiff "discovers, or by exercise of reasonable diligence and intelligence should have discovered, facts which form the basis of a cause of action"). Although Plaintiff alleges that he did not have actual knowledge of the late filing of the Notice of Settlement until late 2021, see Pl. Opp., ¶ 23, he reasonably could have discovered this fact in 2006. The exhibits he submitted alongside his Complaint establish that the Notice was publicly recorded with the Atlantic County, New Jersey, County Clerk on July 24, 2006. See Compl., Exh. B (Notice of Settlement) at ECF p. 41. At that point, Rothman was on constructive notice of the filing of the Notice and had all the facts necessary to allege that it was filed late in violation of N.J. Rev. Stat. § 46:26A-11. See Meyer, 2016 WL 5934691, at *3 (finding plaintiffs deemed to have constructive notice of publicly recorded mortgage and declining to apply "discovery rule" to toll limitations period); First Maryland Financial Services Corp. v. District-Realty Title Insurance Corp., 548 A.2d 787, 791 (D.C. 1988) (public records give constructive notice of their contents). Because he did not file his Complaint within three or six years of that date, Plaintiff's suit is too late.

The Court, consequently, finds that FHFA is entitled to dismissal because Rothman has not established standing and, in the alternative, has filed this action outside of the limitations period.

### B. Wells Fargo Bank and Federal National Mortgage Association

Defendants Wells Fargo and Fannie Mae filed a joint Motion to Dismiss on the same day as FHFA's. In that Motion, they argue that Plaintiff's Complaint should be dismissed because he has not demonstrated an injury in fact that is traceable to their conduct and thus has no standing. See Wells Fargo/Fannie Mae MTD at 7–9. They also assert that Plaintiff has not stated a claim upon which relief can be granted. Id. at 9–11.

Plaintiff's Opposition does not respond directly to Wells Fargo and Fannie Mae's Motion; indeed, it appears to respond only to FHFA and is titled "Objections/Responses to Federal Housing Finance Agency's Motion to Dismiss." Pl. Opp. at 1. The Court, consequently, could grant these Defendants' Motion as conceded by Plaintiff. See LCvR 7(b) (allowing courts to treat unopposed motions as conceded); see also Cohen v. Board of Trustees of the University of the District of Columbia, 819 F.3d 476, 480–81 (D.C. Cir. 2016) (affirming dismissal under Rule 7(b) and cautioning against doing so with prejudice). Because the Court finds that these Defendants are entitled to dismissal on the merits of their Motion, it need not do so.

For essentially the same reasons articulated above, Wells Fargo and Fannie Mae are entitled to dismissal because Plaintiff has not established standing to bring these claims against them. See supra at 10–13. The injury he alleges is the same for all three Defendants, and so the Court's conclusion that he has not demonstrated an injury in fact applies equally to Wells Fargo and Fannie Mae. Any injury is no more attributable to these Defendants than to FHFA, furthermore, as Bernard remains the party responsible for misusing Plaintiff's gift and for placing the Schooner Lane residence at risk of foreclosure. Rothman, therefore, has no standing to bring suit against Wells Fargo and Fannie Mae either, and so the Court will grant their Motion to Dismiss.

## IV.     Conclusion

For the foregoing reasons, Plaintiff's Complaint will be dismissed without prejudice. A separate Order so stating will issue this day.

/s/ <i>James E. Boasberg</i><br>
JAMES E. BOASBERG<br>
United States District Judge

Date:  March 23, 2022